NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

ADVENTURE MEDICS LLC, *Petitioner Employer*,

ZURICH AMERICAN INSURANCE CO, *Petitioner Carrier,*
*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

STEVEN KEFFER, DECENDENT *Respondent Employee*.

No. 1 CA-IC 25-0025

FILED 07-06-2026

---

Special Action - Industrial Commission
ICA Claim No.  20241980041
Carrier Claim No. 2290056545
The Honorable Eric W. Slavin, Administrative Law Judge

**AFFIRMED**

---

COUNSEL

Ritsema Law, Phoenix
By Karolyn F. Clifford
*Counsel for Petitioner Employer and Carrier*

Industrial Commission of Arizona, Phoenix
By Afshan Peimani
*Counsel for Respondent*

Arizona Injury Law Group PLLC, Phoenix
By Briana E. Chua
*Counsel for Respondent Employee*

---

**MEMORANDUM DECISION**

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge Andrew M. Jacobs and Judge Brian Y. Furuya joined.

---

**M O R S E**, Judge:

¶1        This is a claim for death benefits by the surviving spouse and children of Steven Keffer ("Keffer"). The Industrial Commission of Arizona ("ICA") found Keffer's death compensable and awarded benefits. Keffer's employer, Adventure Medics, LLC ("Adventure Medics"), and its insurance carrier, Zurich American Insurance Co. ("Zurich"), challenge the award. For the reasons below, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        Keffer worked seasonally as a firefighter and paramedic for Adventure Medics, a company that provides first responders to wildland fires. On a 106-degree day in August 2023, Keffer returned home from a three-week deployment fighting a wildland fire. Keffer had to prepare immediately to redeploy the next day to another fire. He was alone at the house, and his wife and teenage children were in another state. He talked to his wife on the phone at about 3:00 p.m. and was seen washing his work truck in his driveway about 3:30 p.m. He sent a text message to a co-worker around 5:30 p.m. which was the last outgoing communication on his phone. The next day, the police conducted a welfare check and found Keffer dead, lying face down in his bedroom. The coroner conducted an autopsy and determined Keffer died of natural causes, specifically a heart attack.

¶3        Keffer was 62 years old and in good health, with no reported heart problems or any other health problems. Uncontested evidence showed Keffer's preparation routine consisted of removing, cleaning and checking, and repacking all his equipment from his work truck, including both medical and camping equipment. This preparation was done in his garage and driveway. The preparations usually took about three to four

hours to complete. Adventure Medics admitted Keffer was on duty when he died.

¶4 Keffer's wife and children filed a death benefits claim, which Adventure Medics and Zurich denied. At the compensability hearing, the ICA Administrative Law Judge ("ALJ") heard from two medical experts addressing whether Keffer's activities that day were a substantial contributing cause of the heart attack.

¶5 Dr. Ehrlich, a cardiologist, provided a medical opinion about the relationship between Keffer's employment activities and his heart attack. Dr. Ehrlich testified that Keffer "had a heart attack from a ruptured plaque that blocked off his coronary artery" which caused "cardiac arrest." He described risk factors that could cause a plaque to rupture such as heavy physical activity and high temperatures. He determined those factors were present on the day Keffer died, stating: "[I]t's the perfect setup for a man who has these really easy-to-break plaques to have one break." He opined that "the activities outside in the heat were what triggered" the ruptured plaque, saying the rupture was "very, very, very probably related to" what Keffer was doing outside before he went into the house.

¶6 The medical examiner, Dr. Hu, also testified. He opined, based on the circumstances in which Keffer's body was found, that the rupture in the artery happened sometime during the day but he could not say exactly when. He acknowledged that heavy lifting and exposure to heat could have contributed to the heart attack. Dr. Hu testified that he could not say with a "reasonable degree of medical certainty" that the excess lifting and heat was a substantial contributing cause of the plaque rupture because he did not know Keffer's activity before his death, but these types of activities "could be substantial."

¶7 On cross-examination, Dr. Hu affirmed that lifting weight or exposure to heat would not be considered insubstantial and completed his testimony by noting if Keffer was doing heavy lifting that day it could have been a substantial contributing factor to his heart attack.

¶8 After reviewing the evidence, the ALJ found Dr. Ehrlich's opinion "more probably correct and well-founded" that the work activities Keffer was performing were a substantial contributing cause of the heart attack and death. He noted the only difference in the opinion of Dr. Hu was he was less certain than Dr. Ehrlich about causation. The ALJ issued an award finding the claim compensable.

¶9 Upon administrative review, the ALJ affirmed his decision, expressly stating he found the lay witnesses credible, and noted: "The critical fact of [Keffer] working outside to prepare his truck in 106-degree heat, with a subsequent cardiac event caused in substantial part by such exertion, was supported by both medical experts as a classic situation that falls well within what A.R.S. [§] 23-1043.01 requires. . . ."

¶10 Adventure Medics and Zurich filed this statutory special action. We have jurisdiction under A.R.S. §§ 12-120.21(B) and 23-951(A).

## DISCUSSION

¶11 An injury that leads to death is compensable if it arises out of and in the course of employment. A.R.S. § 23-1021(A). But a heart-related injury is not compensable "unless some injury, stress or exertion related to the employment was a substantial contributing cause." A.R.S. § 23-1043.01(A). "Substantial . . . means more than insubstantial or slight." *Skyview Cooling Co. v. Indus. Comm'n*, 142 Ariz. 554, 559 (App. 1984). Furthermore, even an employee's customary occupational stress and exertion can be sufficient to constitute a substantial contributing cause of a heart attack. *Konichek v. Indus. Comm'n*, 167 Ariz. 296, 298 (App. 1990). The employee need not be actively engaged in job duties at the time an injury occurs. *Dugan v. Am. Exp. Travel Related Servs. Co.*, 185 Ariz. 93, 101 (App. 1995).

¶12 Petitioners Adventure Medics and Zurich contend (1) the factual findings by the ALJ are insufficient, (2) the evidence does not show Keffer was in the course of employment when he died, (3) the foundation relied upon by Dr. Ehrlich is too speculative to give weight to his medical opinion, and (4) the compensability finding thwarts the legislative intent of the heart-related claims statute. We disagree.

¶13 A reviewing court will not set aside an ICA award if it can determine the basis for the ALJ's conclusions. *Mace v. Indus. Comm'n*, 204 Ariz. 207, 209–10, ¶¶ 4–5 (App. 2003). The basis for the ALJ's compensability determination here was the testimony "from all the witnesses, taken as a whole" and the expert medical opinions. We have no difficulty discerning that evidentiary foundation. In the Decision Upon Review, the ALJ stated Keffer was working outside in high heat to prepare his truck and equipment for redeployment.

¶14 The ALJ's conclusion that Keffer was performing work activities that contributed to his heart attack is supported by evidence, including a letter from Adventure Medics's owner stating Keffer was on

duty when he died. The testimony of Keffer's wife and adult daughter, both of whom had observed Keffer perform those activities multiple times, also supports that conclusion. Thus, evidence supports the legal conclusion Keffer was in the course of employment when he suffered the heart attack.

¶15        Regarding the expert testimony, the ALJ has the primary responsibility to resolve conflicts in medical opinion evidence. *Carousel Snack Bar v. Indus. Comm'n*, 156 Ariz. 43, 46 (1988). This court will affirm the ALJ's resolution of conflicting medical opinions unless there is an abuse of discretion. *Kaibab Indus. v. Indus. Comm'n*, 196 Ariz. 601, 605, ¶ 10 (App. 2000). An abuse of discretion occurs when no reasonable theory of the evidence supports the ICA decision. *Malinski v. Indus. Comm'n*, 103 Ariz. 213, 217 (1968).

¶16        Here, there was no real conflict in the medical opinions. Dr. Ehrlich was confident the activities and circumstances described to him would have substantially contributed to Keffer's heart attack. Those activities and circumstances were not speculative as other evidence in the record supported the factual basis of Dr. Ehrlich's opinion. In addition, the ALJ's conclusion that Keffer was performing work activities when he suffered the heart attack is a reasonable theory of the evidence. Dr. Hu, while not as confident in his understanding of the level of exertion Keffer's activities required, agreed those activities could have substantially contributed to the heart attack, provided they involved significant physical exertion in high temperatures. Petitioners' argument here devolves into an argument that Keffer's lay witness evidence was insufficient to support Dr. Erhlich's opinion and that Dr. Hu's opinion should have been given more weight. But, as we noted, the ALJ weighs expert opinions, not this Court. The foundation for Dr. Ehrlich's medical opinion was based not on speculation but on evidence provided by competent, credible witnesses.

¶17        Finally, Petitioners argue the award thwarts the legislative intent of the substantial contributing cause requirement. This argument presupposes the evidence is not sufficient to show causation. But we have found evidence in the record that supports the ALJ's findings and conclusions and provides a reasonable theory of the evidence.

## CONCLUSION

¶18      We affirm.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:        JR